Charles SEXTON, et al.

v.

CITY OF SOUTH PORTLAND, et al.[1]

Supreme Judicial Court of Maine.
Argued Sept. 19, 1985.
Decided Oct. 30, 1985.

1. The building inspector for the City of South Portland and the holder of the permit, Eleanor Woodbury, are also named as parties defendant.

Charles M. Sexton (orally), South Portland, for plaintiffs.

William Dale (orally), Corp. Counsel, South Portland, for defendants.

C. Alan Beagle (orally), Martin J. Ridge, Portland, for Eleanor Woodbury.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN and SCOLNIK, JJ.

WATHEN, Justice.

 Plaintiffs Charles and Rosemary Sexton appeal from a judgment of the Superior Court (Cumberland County) denying their appeal from a decision of the South Portland Zoning Board of Appeals affirming the issuance of a building permit to defendant Eleanor Woodbury.[2] At issue is the validity of a building permit to construct a house on a vacant lot. Plaintiffs argue on appeal that both the Board and the Superior Court erroneously construed the South Portland zoning ordinance by failing to require the merger of contiguous lots owned by the same person. We find no error and we deny the appeal.

I.

On August 1, 1984, Mrs. Woodbury was granted a building permit for the construction of a single family house on a 6,744 square foot lot on Ship Channel Road in South Portland. The lot is contiguous with a second lot of 9,626 square feet owned by

---

2. Defendant Woodbury has moved to dismiss the appeal, alleging that the plaintiffs lack standing. The plaintiffs in this action are nine owners of property in South Portland. With the exception of Charles and Rosemary Sexton who were the owners of an abutting lot, the record fails to demonstrate a potential for particularized injury on the part of the remaining plaintiffs. *See Harrington v. Inhabitants of the Town of Kennebunk,* 459 A.2d 557, 559 (Me.1983). Accordingly, we dismiss the appeal as to all plaintiffs other than the Sextons.

Finally, although defendant Woodbury does not challenge the Sextons' original standing, she argues that they lost their standing between the time the decision was rendered in Superior Court and the time of oral argument on the appeal. The parties agree that after decision the Sextons sold their home and retained a mortgage. We are not persuaded that this change in status, occurring after judgment, serves to deprive plaintiffs of standing to maintain the appeal. *Cf. Carey v. Planning Board of Revere,* 335 Mass. 740, 744, 139 N.E.2d 920, 923 (1957).

Mrs. Woodbury, on which a single family house is located. Both lots are zoned for residential use and are recorded on a 1928 subdivision plot. Mrs. Woodbury planned to move into a new house on the smaller lot and to sell the existing house on the larger lot. Following the issuance of the building permit, plaintiffs appealed, first to the Board and then to the Superior Court, contending that the zoning ordinance prohibited the construction of a dwelling on the smaller lot.

The current minimum lot size for Residential District AA is 20,000 square feet under the South Portland zoning ordinance. The ordinance includes a provision, commonly referred to as a merger clause, requiring that multiple lots of continuous frontage, owned by the same person, be merged to meet the current mimimum lot size requirement. Section 27–7(f) provides as follows:

> Recorded lots in single ownership and of continuous frontage with lots in the same ownership shall, after January 1, 1978, comply with the provisions of this chapter, except those lots which are included in any subdivision plan approved by the planning board and recorded in the Cumberland County Registry of Deeds after January 1, 1967.

The source of disagreement in the present case is not the merger clause but, rather, the proper interpretation of a companion clause which creates an exception to the requirement of merger. Section 27–7(h) of the ordinance provides in pertinent part:

> Notwithstanding the provisions of subsections (f) ... of this section, single lots of record at the effective date of adoption or amendment of this chapter may be built upon provided that the following criteria are met:
> (1) Lots of record in the Cumberland County Registry of Deeds prior to September 20, 1943 in Residential districts AA, A, G and RF shall be at least five thousand (5,000) square feet in area and have a minimum of fifty (50) feet frontage ....

■ Plaintiffs assert that both the Board and the Superior Court erred in finding that Mrs. Woodbury's application for a building permit fell within the exception. It is their position that the term "single lot of record" as it appears in section 27–7(h) refers only to an isolated lot, one not having continuous frontage with any of the owner's other lots. Because the meaning of this term is not clear from a reading of the ordinance, we must look to the legislative history for guidance. *Mundy v. Simmons*, 424 A.2d 135, 137 (Me.1980). The legislative history of section 27–7(h) does not support plaintiffs' position.

Prior to 1976 the applicable merger clause and the exceptions read as follows:

> Recorded lots in single ownership and of continuous frontage with lots in the same ownership shall comply with the provisions of this Ordinance except those which are included in Subdivision approved by the Planning Board and recorded in the Cumberland County Registry of Deeds since January 1, 1967.

> In any district, notwithstanding limitations imposed by other sections of this Ordinance, single lots of record at the effective date of adoption or amendment of this Ordinance may be built upon. Such lots shall be in separate ownership and not of continuous frontage with other lots in the same ownership. This provision shall apply even though such lots fail to meet the minimum requirements for area or width, or both, which are applicable in the district provided that yard dimensions and other requirements, not involving area or width, or both, of the lot shall conform to the regulation for the district in which such lot is located. Variance of yard and other requirements not involving area or width shall be obtained through action of the Board of Appeals.

On January 5, 1976, an amendment to the ordinance was considered by the South Portland City Council. The proposed amendment was identical to the present ordinance except that the words "Subject

to" appeared at the beginning of the exception set forth in section 27–7(h). During debate, the municipal attorney expressed his opinion that the purpose of the proposed amendment was "to cut off the grandfather rights as of January 1, 1978, and I don't think they [the Planning Board] have the legal authority to do so." The attorney informed the City Council that the entire proposal would be unenforceable.[3] In an effort to remedy the perceived defect, he suggested that the word "Notwithstanding" be substituted for the phrase "Subject to" in section 27–7(h) to preserve all "grandfather rights." The City Council accepted the amendment and the ordinance was enacted in its present form.

We conclude that the language of section 27–7(h) and the legislative history support the construction adopted by the Zoning Board of Appeals and the Superior Court. The merger clause affects only multiple lots. Section 27–7(h) purports to except certain pre-existing lots from the merger requirement. We cannot accept the assertion that section 27–7(h) relates only to an isolated lot, since those lots would, in any event, be unaffected by the merger clause. It is beyond dispute that after the 1976 amendment section 27–7(h) is no longer confined to an isolated lot but includes one having continuous frontage with another lot in the same ownership. Although the exception substantially erodes the operative scope of the merger clause, at least as it relates to residential lots, the intent of the ordinance is clear and this Court is required to uphold it.

The entry must be:

Judgment affirmed.

All concurring.

**3.** We intimate no opinion on the validity of the attorney's opinion.